DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Rohan A. Wilson, ) | |
| ) | CASE NO. 1:03 CR 165 |
| Petitioner-Defendant, ) | (Civil Case No. 1:07 CV 3823) |
| ) | |
| v. ) | MEMORANDUM OPINION AND |
| ) | ORDER |
| United States of America, ) | |
| ) | |
| Respondent-Plaintiff. ) | |
| ) | |

I.  Introduction

Rohan Wilson filed on December 17, 2007, a pro se petition seeking relief under the provisions of 28 U.S.C. § 2255 (See Docket No. 283).  Wilson entered pleas of guilty to count 1 and count 4 of the indictment in case number 1:03 CR 165.  Count 1 charged Wilson with conspiracy to possess with intent to distribute and distribution of cocaine.  Count 4 charged Wilson with possession with the intent to distribute cocaine.  His trial began on July 7, 2003, and on July 8, 2003, Wilson entered a plea of guilty to count 1.  His conviction and sentence was subsequently affirmed on September 5, 2006 by the Sixth Circuit.  (See United States v. Williams, et al, 194 Fed. Appx. 318 (6th Cir. 2006) unpublished.)  On January 8, 2007, Wilson's petition for certiorari was denied by the Supreme Court.  This pro se lawsuit followed.

II.  Wilson's Pro Se Claims in Support of Relief from his Conviction and Sentence

Wilson raises three claims:

(1) His counsel was ineffective when he failed to warn petitioner of the implications of Apprendi v. New Jersey

(2) The petitioner should be allowed to withdraw his plea on the basis that his plea

(1:03 CR 165
1:07 CV 3823)

>   was involuntary and unknowing due to counsel's errors.

(3) The petitioner's counsel engaged in inadequate pretrial/pre-plea preparation which constituted ineffective assistance of counsel.

The Court distills from the substance of the petitioner's pro se brief that he contends that he was misled into believing that he would be entitled to sentence reductions below the mandatory minimum sentence of 120 months pursuant to safety valve reductions in the guideline sentence which would remove the petitioner's exposure to the mandatory minimum sentence of 120 months.

The Court has examined the transcript of the defendant's plea of guilty which came during the second day of his trial with the co-defendant Kerven Telsey.

After the Court determined that the defendant's plea of guilty to counts 1 and 4 would be voluntary and an exercise of the defendant's own free will, the Court then determined that there was a factual basis for the pleas of guilty following the government's description of the factual basis which is from the guilty plea hearing transcript at page 15, page 8 through page 17, line 19.[1]

---

[1] MR. PINJUH: ... Your Honor, the United States would prove beginning some time in the fall of 2003, in the Northern District of Ohio, Eastern Division and elsewhere, that Mr. Rohan Wilson and Troy Williams, also known as Omar Pitter, Kevin Haughton, also known as Tony Wilson Green, Marcellus Smith, and Jean Fritz, and others, known and unknown, did engage in a conspiracy to bring cocaine from the California area into Cleveland, Ohio for distribution.

Mr. Wilson helped coordinate the delivery of cocaine. It was driven by Tony Wilson Green and Troy Williams in a green Mazda that stored the cocaine.

Once they arrived in Cleveland, they would proceed to Marcellus Smith's house. Once at Mr. Smith's house, they would engage in distributing the cocaine to various buyers in the Cleveland area. Mr. Wilson helped coordinate some of those sales. He was also in charge of the money that was received. He was holding the money on behalf of other

(1:03 CR 165
1:07 CV 3823)

After determining that there was a factual basis to counts 1 and 4, the Court then addressed the issue of the sentencing consequences if Wilson was to plead guilty to counts 1 and 4. The Court first discussed the application of the sentencing guideline table and the issue of

---

> coconspirators in the case. He also periodically paid out some monies to other coconspirators.
>
> The $84,000 that was seized from Regina Stackhouse's apartment was proceeds from the cocaine sales that had been taking place the week of March 20th. The $10,500 recovered from the dresser was also proceeds Mr. Smith had placed in there.
>
> On March 20th members of the HIDTA Task Force issued a search warrant at 12613 Forest Avenue, up and down. During that search, members of the search team found approximately two kilograms of cocaine in the downstairs unit of the Forest Avenue address. That was part of the cocaine that had been brought from the California area.
>
> THE COURT: Excuse me. Is that the basis of Count 4?
>
> MR. PINJUH: That is the bsis of Count 4. That's the charge in Count 4, possession with the intent to distribute that cocaine.
>
> Additionally, later an additional search revealed three additional kilograms of cocaine that were concealed in the secret compartment in the green Mazda.
>
> As the court is aware, the garbage pull resulted in seizure three additional kilogram wrappers that were thrown away that represented drugs sold during that week.
>
> All of the cocaine that was seized in this case was sent to the North Central lab in Chicago where tests confirmed that the substance was indeed cocaine HCL.
>
> Mr. Wilson was aware of the fact that the substance that was conspired to be possessed and distributed, and possessed with the intent to distribute, as actually cocaine.
>
> THE COURT: Any disagreement with what the lawyer said for the government?
>
> THE DEFENDANT: No, most of it is correct.
>
> THE COURT: Well, the court finds there is a factual basis for your proposed pleas of guilty to Counts 1 and 4.

(1:03 CR 165
1:07 CV 3823)

departures before reflecting on the mandatory minimum sentence of 120 months absent Wilson's eligibility for the safety valve.

The transcript of the petitioner's guilty plea in which the sentencing ramifications were outlined by the Court is from page 23, line 6 through pge 27, line 13.[2]

---

[2] THE COURT: Okay. Now, having said that, now I want to reflect on what the lawyers believe the offense level would be if you enter a plea of guilty.

I also want to stress the fact that Mr. Pinjuh told me that this, if you plead guilty to Count 1 that, and there is more than five --

Does it have to be more than five kilograms to make it?

MR. PINJUH: Five or more, your Honor.

THE COURT: Five or more kilograms, then it is a mandatory minimum sentence of ten years, even after I calculated everything, let's say -- and I think this can happen sometimes -- let's say that I -- let's look at the offense level again and look at 29, Criminal History Category I.

Do you see that?

THE DEFENDANT: Yes, I see it, sir.

THE COURT: Well, let's assume that the offense level is 32 and I gave three off for acceptance, I'm down to 87 to 108 months.

Do you see that?

THE DEFENDANT: Yes, sir.

THE COURT: But I would have to give 120 months anyhow because it is a mandatory minimum. So in that case the mandatory minimum trumps the calculation; it overrides the calculation.

THE DEFENDANT: Oh, it does?

THE COURT: It may sound crazy but it happens.

THE DEFENDANT: I always wanted to ask that question, why does it do that, because I didn't under stand that.

THE COURT: That's Congress in its infinite wisdom. I'm being sarcastic now.

4

(1:03 CR 165
1:07 CV 3823)

THE DEFENDANT:  It would still stay at the 121 months?

THE COURT:  No, I would have to go to 120, have to go to ten years.  Even though the maximum under the guidelines is 108 months, I would have to go to 120.

Why?  Because Congress says so.  If it sounds screwy, join the club.  I think it's screwy too, but that's the way it is.

THE DEFENDANT:  Okay.

THE COURT:  Now, to determine the offense level, I have to know what the weight is.

And am I correct that if the weight is five kilograms, it is 32?  The offense level is 32?

THE DEFENDANT:  Yes, sir.

MR. PINJUH:  Yes, your Honor, at least 5 kilograms but less than 15 kilograms, which is what the evidence in this case suggests, it would be a level 32.

THE COURT:  So now I'm at 32.

Now there can be either -- you can kick it up or kick it down based on what the facts are.  You can kick it up for role in the offense.  You can reduce it for role in the offense.  There is a spread of eight points there, believe it or not.

And I gather that counsel has agreed that there would be no adjustment for offense level?

MR. PINJUH:  That's correct, your Honor.  We would agree that we would begin at a level 32 and allow -- I'm allowed to recommend to the court only two levels for acceptance of responsibility.  And then Mr. Cafferkey is going to attempt to obtain for his client the reduction under the safety valve provision, which would be an additional two levels.  And it would free the court from the mandatory minimum period of confinement.

THE COURT:  I don't want to spend a lot of time on the safety valve, but I gather, Mr. Wilson, that Mr. Cafferkey and you have discussed the safety valve application.  Has Mr. Wilson made any kind of proffer to the government?

MR. CAFFERKEY:  Yes, your Honor.

MR. PINJUH:  He has, your Honor.

THE COURT:  So he's attempted to comply with the fifth element.

(1:03 CR 165
1:07 CV 3823)

MR. PINJUH: <u>And it is my understanding at this point, your Honor, that from the agents that conducted the proffer yesterday it would be their position that he had provided a truthful statement and qualified for the fifth element. The only question at this time would be his criminal history category. Mr. Cafferkey and I have both examined that and based on our best judgment we believe it would be Category I.</u>

MR. CAFFERKEY: I would just highlight, Judge, my client has what's called a withheld adjudication down in Miami and I didn't know if it is their form of diversion.

THE COURT: It hasn't risen to a conviction?

MR. CAFFERKEY: It might have. But he's never done any jail time whatsoever. We believe it is just one point, if it is considered a conviction under the guidelines, he still would be eligible.

He also may have a traffic offense. We've gone to the excluded offenses. It is an excluded offense provided he did not get one year or more of probation on it, or do more than, I think, 30 days in jail on it.

My client has indicated he did five days in jail on it and did not have a year or more probation. So we feel that shouldn't count.

So if that's true, it looks like -- and Mr. Pinjuh is going to indicate as to factors 2, 3 and 4, my client does not meet a violent crime or no death or bodily injury occurred. So my client should meet that category.

THE COURT: It is your belief that he will.

MR. CAFFERKEY: As best as I could.

THE COURT: The only thing I want to stress to Mr. Wilson is that in the final analysis, I have to make that decision. Do you understand that? And I'm not going to make that decision today.

THE DEFENDANT. Yes.

THE COURT: That will wait until the presentence report and an opportunity for both sides to comment on the presentence report once it's been completed.

You understand that?

THE DEFENDANT: Okay.

THE COURT: So what it looks like to me is that unless you get the safety valve you are looking at ten years as a minimum sentence.

(1:03 CR 165
1:07 CV 3823)

In the Court's view, the critical declaration with respect to the possibility of the

---

Is that the way you see it?

THE DEFENDANT:  At this point, yes, sir.

THE COURT:  If you get the safety valve, then it is going to drop down to some lower factor.  And I gather you understand that.

THE DEFENDANT:  Yes.  There was -- the prosecutor and my lawyer also was telling me that the prosecutor said that he could only give me two points but that --

MR. CAFFERKEY:  For acceptance.

THE COURT:  All he can do is recommend.

THE DEFENDANT:  Record two points.

THE COURT:  Nobody can tell me what to do.  They can make recommendations, but in the final analysis I'm the only one that can make that call.

THE DEFENDANT:  I totally understand you, sir.

MR. CAFFERKEY:  That's acceptance of responsibility.

THE DEFENDANT:  And you can recommend the other one to make it three points.

THE COURT:  I have that power.

THE DEFENDANT:  Yes, that's what he said.

THE COURT:  Okay.  Well, I gather at this point you have at least some understanding of what the sentencing consequences are, and you recognize to some extent it's up in the air.

THE DEFENDANT:  Well, at this time, yes, sir.

THE COURT:  But notwithstanding that, you are prepared to enter pleas of guilty to Counts 1 and 4, is that your position?

THE DEFENDANT:  Yes, sir.

7

(1:03 CR 165
1:07 CV 3823)

application of the safety valve is set forth in AUSA Pinjuh's underlined statement at page 24, lines 10 through 18.

### III. The Government's Position

The government filed a brief in opposition to Wilson's motion (Docket No. 285) and contends, contrary to Wilson's contentions, that Wilson was afforded the effective assistance of counsel throughout the pendency of his case.

### IV. Wilson's Response

On March 21, 2008, the Court published an order granting Wilson's motion (Docket No. 286) for time to file a response to the government's brief in opposition. The Court set the deadline as of April 28, 2008. On April 28, 2008, the Court received an envelope from Wilson postmarked April 24, 2008. The envelope contained a one-page affidavit which the Court found to have been timely filed.

The affidavit in its entirety states:

#### AFFIDAVIT

> I Rohan Wilson, swear under penalty of perjury on the laws of the United States of America pursuant to 28 U.S.C. § 1746 that the following averment is true, correct, complete, and not meant to mislead.
>
> My attorney advised me before taking a plea of guilty that, I would receive a sentence of 5 years and 10 months to a maximum of 7 years if I take the plea offered by the United States prosecutor. Mr. K. Cafferkey promised me that I would not receive the mandatory minimum due to an agreement Mr. K. Cafferkey made with the United States prosecutor before execution of the plea agreement. I was also promised that I would get 2 points deducted for a proffer with the prosecutor, with additional points deducted

8

(1:03 CR 165
1:07 CV 3823)

>from my sentence he stated 2 points for having a minor role in the offence [sic] charged. When I received my sentence Mr. K. Cafferkey failed to object to the sentence imposed, thus he promised me that I would receive the deduction stated in this affidavit.

>Date: <u>April. 23rd 2008</u>        Respectfully Submitted,

>         /s/ Rohan Wilson
>        Rohan Wilson
>        Reg: 39133-060
>        FCI Bennettsville Medium
>        P.O. Box 52020
>        Bennettsville, SC   29512

### V.  The Court's Ruling

Following an examination of the transcript of Wilson's guilty plea coupled with Wilson's affidavit, the Court orders an evidentiary hearing for the purpose of determining whether, as claimed by Wilson, he was denied the effective assistance of counsel in connection with his guilty plea to counts 1 and 4.

The Court schedules the evidentiary hearing for the 11th day of July, 2008 at 10:00 a.m.

The Court requests that the United States Marshal return Wilson to the district at least

(1:03 CR 165
1:07 CV 3823)

two weeks before the above-described evidentiary hearing.

The Court appoints Lawrence Whitney to represent Wilson during the evidentiary hearing.

The clerk is directed to mail a copy of this Memorandum Opinion and Order to Rohan A. Wilson at his address as it appears in the pleadings and also to Attorney Lawrence Whitney.


IT IS SO ORDERED.


| | |
|---|---|
| May 30, 2008 | */s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |